IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>                Plaintiff,<br><br>   v.<br><br>PMT CORPORATION,<br><br>                Defendant. | Civil Action No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## NATURE OF THE ACTION

This is an action brought by the United States Equal Employment Opportunity Commission ("EEOC") under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626(b) (the "ADEA"), and Title I of the Civil Rights Act of 1991 to correct unlawful employment patterns or practices on the basis of sex and age, and to correct unlawful retaliation against individuals who opposed unlawful employment practices and participated in investigative proceedings under Title VII.

The EEOC alleges that Defendant PMT Corporation ("PMT") engaged in a pattern or practice of discrimination on the basis of sex by failing to hire females for sales representative positions and seeks appropriate relief for a class of individuals who were denied employment by PMT because of their sex, female. As alleged with greater

1

particularity in Paragraph 13 below, the evidence will establish that PMT failed to hire women for sales representative positions in violation of Title VII.

The EEOC also alleges Defendant PMT engaged in a pattern or practice of discrimination on the basis of age by failing to hire applicants over the age of 40 for sales representative positions and seeks appropriate relief for a class of individuals who were denied employment by PMT because of their age. As alleged with greater particularity in Paragraph 17 below, the evidence will establish that PMT failed to hire employees within the protected age group in violation of the ADEA.

The EEOC also alleges that Defendant PMT engaged in unlawful retaliation against former Human Resources Manager Patricia Lebens for opposing PMT's unlawful employment practices and for participating in protected activity. As alleged with greater particularity in Paragraphs 20-30 below, PMT created a retaliatory hostile working environment that caused Lebens to be constructively discharged, and filed false criminal charges against her in retaliation for opposing PMT's unlawful employment practices and for participating in protected activity.

Additionally, the EEOC alleges that Defendant PMT failed to retain applications and related documents in violation of the record-keeping requirements of Title VII, and willfully and purposefully destroyed evidence that is relevant to the EEOC's claims in this litigation.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to §§ 706(f)(1) and (3) of Title VII; Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a; and Section 7(b) of the ADEA, which incorporates by reference Sections 16(c) and 17 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(c) and 217.

2. The unlawful employment practices alleged herein were committed in numerous locations, including within the jurisdiction of the United States District Court for the District of Minnesota.

## PARTIES

3. The plaintiff, the EEOC, is the agency of the United States of America charged with administering, interpreting and enforcing Title VII, and is expressly authorized to bring this action by § 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3). The EEOC is also charged with administering, interpreting and enforcing the ADEA, and is expressly authorized to bring this action by Section 7(b) of the ADEA, 29 U.S.C. § 626(b), as amended by Section 2 of Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and by Public Law 98-532 (1984), 98 Stat. 2705.

4. PMT manufactures and sells medical devices and equipment across the country and internationally. PMT relies on sales representatives to create and facilitate a customer network for its products. PMT's sales representatives are located in regions across the United States.

3

5. At all relevant times, PMT has continuously been a Minnesota corporation doing business in the State of Minnesota with its principal place of business at 1500 Park Road, P.O. Box 610, Chanhassen, Minnesota 55317

6. At all relevant times, PMT has continuously had at least 20 employees.

7. At all relevant times, PMT has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h), and Sections 11(b), (g) and (h) of the ADEA, 29 U.S.C. §§ 630(b), (g) and (h).

## STATEMENT OF CLAIMS

8. On October 27, 2010, more than 30 days prior to the institution of this lawsuit, a charge was filed with the EEOC by a commissioner thereof appointed by the President of the United States, alleging violations of Title VII by PMT.

9. On September 4, 2012, the EEOC determined that reasonable cause existed to believe that PMT violated Title VII.

10. On September 4, 2012, the EEOC determined that reasonable cause existed to believe that PMT violated the ADEA.

11. Prior to institution of this lawsuit, the EEOC's representatives attempted to eliminate the unlawful employment patterns or practices alleged below and to effect voluntary compliance with Title VII and the ADEA through informal methods of conciliation, conference and persuasion within the meaning of §§ 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3), and Sections 11(b), (g) and (h) of the ADEA, 29 U.S.C. §§ 630(b), (g) and (h):

    a. On September 4, 2012, the EEOC invited PMT to engage in informal conciliation efforts to eliminate the practices the EEOC found unlawful.

    b. During the period September 4, 2012 and May 13, 2013, the EEOC and PMT engaged in such informal efforts.

    c. On May 13, 2013, the EEOC determined that it was unable to obtain an agreement acceptable to the EEOC by informal methods of conciliation, conference, and persuasion, and concluded those efforts, and so advised PMT.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

## SEX DISCRIMINATION

13. Since at least January 1, 2007, PMT has engaged in a pattern or practice of unlawful sex discrimination, in violation of § 703(a) of Title VII, 42 U.S.C. § 2000e-2(a). These unlawful employment patterns or practices include but are not limited to the following:

    a. PMT intentionally discriminated against female applicants for sales representative positions because of their sex by maintaining a hiring system through which PMT intentionally denied employment opportunities to qualified females in favor of equally or less qualified males.

    b. PMT disproportionately excludes women from sales representative positions through a systemic pattern or practice of discrimination.

    c. While human resources and sales managers are involved in screening sales representative applicants for interviews and recommending them for hire, one person – PMT President Alfred Iversen – was involved in most, if not all of

the sales representative hiring processes and is the final decisionmaker for all sales representative hiring.

     d.  Since at least January 1, 2007, PMT President Alfred Iversen, either directly or implicitly, has instructed human resources officials, hiring managers and other employees involved in the hiring process to reject female applicants for sales representative positions.

     e.  Between at least January 1, 2007 and October 27, 2010, PMT hired at least 70 individuals into sales representative positions.

     f.  Although many qualified female applicants applied for sales representative positions between January 1, 2007 and October 27, 2010, PMT did not hire any of them.

     g.  PMT's zero hire rate of female applicants for sales representative positions is well below external benchmarks for the availability of female sales professionals in that industry.  Such external benchmarks include, but are not limited to, the following: the Minnesota medical technology industry; the Bureau of Labor Statistics data for sales representative positions within PMT's industry; the female representation in the pool of applicants for sales representative positions with PMT.  These disparities are statistically significant.

     h.  During the period of January 1, 2007 until mid-2012, PMT employed a total of 120 sales representatives on its payroll.  Of these 120 sales representatives, only 3 were female.  None of the three were hired until after a charge of discrimination was filed alleging that PMT discriminated against women on the

6

basis of sex in hiring for sales representative positions. Two female sales representatives were hired in 2011, and one female sales representative was hired in 2012.

    i.  PMT President Alfred Iversen instructed sales managers and human resources personnel that "women in sales is a 100% fail."

    j.  PMT President Alfred Iversen instructed sales managers and human resources personnel that women are a "failure at travel."

    k.  PMT President Alfred Iversen instructed sales managers and human resources personnel that women were poorly suited for travelling because they needed to be chaperoned and he did not want them on the road.

    l.  PMT President Alfred Iversen and other PMT managers discouraged sales managers and human resources personnel from forwarding or recommending that female applicants be hired for sales representative positions.

    m.  PMT President Alfred Iversen frequently screened applications sent to human resources and regularly discarded or destroyed applications for sales representative positions before they were considered in PMT's formal hiring process.

    n.  PMT President Alfred Iversen regularly ordered the destruction of applications for sales representative positions.

14.  The effect of the practices complained of in Paragraph 13 above has been to deprive female applicants of equal employment opportunities and otherwise adversely affect their status as applicants and employees because of sex.

15. The unlawful employment practices complained of in Paragraph 13 were and are intentional.

16. The unlawful employment practices complained of in Paragraph 13 were done with malice or reckless indifference to the federally protected rights of female applicants for sales representative positions at PMT.

## AGE DISCRIMINATION

17. Since at least January 1, 2007, PMT has engaged in a pattern or practice of unlawful age discrimination in violation of Section 4 of the ADEA, 29 U.S.C. § 623(a). These unlawful employment patterns or practices include, but are not limited to, the following:

    a. Since at least January 1, 2007, PMT has subjected a class of aggrieved applicants for sales representative positions to an ongoing pattern or practice of discriminatory failure to hire on the basis of such applicants' age, 40 years and older (hereafter the "protected age group").

    b. Between January 1, 2007 and October 27, 2010, PMT hired at least 70 sales representatives. None of the sales representatives hired by PMT during this time period was in the protected age group.

    c. PMT's zero hire rate for sales representative within the protected age group is well below external benchmarks for the availability of protected age group sales professionals in that industry. Such external benchmarks include, but are not limited to, the following: the general population; the Bureau of Labor Statistics data for sales representative positions within PMT's industry; and the

8

protected age group's representation in the pool of applicants for sales representative positions with PMT.  These disparities are statistically significant.

      d.  Since at least January 1, 2007, PMT President Alfred Iversen, either directly, implicitly or through other PMT managers, has instructed human resources officials, hiring managers and other employees involved in the hiring process not to hire applicants for sales representative positions who were within the protected age group.

      e.  PMT President Alfred Iversen directed employees involved in the hiring process to determine each applicant's age, and when not evident from a resume or application, to screen out applications with college graduation dates more than 10 years prior.

18.  The effect of the practices complained of in Paragraph 17 above has been to deprive a class of aggrieved applicants in the protected age group of equal employment opportunities and otherwise adversely affect their status as applicants or potential employees because of their age.

19.  The unlawful employment practices complained of in Paragraph 17 above were and are willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

**HOSTILE WORK ENVIRONMENT AND CONSTRUCTIVE DISCHARGE**

20.  Patricia Lebens began her employment as PMT's Human Resources Manager on March 8, 2010.

21. Lebens's job duties included reviewing applications and selecting candidates for employment at PMT.

22. Since at least March 8, 2010, PMT has permitted the creation of, and failed to prevent or correct an unlawful, retaliatory hostile work environment, in violation of § 704(a) of Title VII, 42 U.S.C. § 2000e-3. These unlawful employment practices include but are not limited to the following acts that would dissuade a reasonable worker from opposing unlawful employment practices, making or supporting a charge of discrimination, or otherwise participating in protected activity:

 a. Throughout her employment, PMT President Alfred Iversen directed Lebens to engage in and carry out discriminatory hiring practices for sales representative positions.

 b. After being notified of the EEOC charges on or about November 1, 2010, PMT President Alfred Iversen engaged in retaliatory behavior including, but not limited to, declaring to a meeting of managers that he would "go after" the person responsible for the EEOC charges, interrogating employees throughout PMT to identify the person responsible for the EEOC charges, and threatening to sue the person responsible for the EEOC charges.

 c. Unbeknownst to PMT President Alfred Iversen at the time he received the EEOC charges, PMT's then-current Human Resources Manager Patricia Lebens was the source of the allegations that led to the EEOC charges.

    d. In the two weeks that followed PMT's receipt of the EEOC charges, PMT President Alfred Iversen continued making a constant barrage of threats to retaliate against the unidentified source of the EEOC charges.

    e. The conduct by PMT President Alfred Iversen rendered Patricia Lebens's work environment objectively intolerable. Lebens's subsequent resignation was a reasonably foreseeable consequence of the retaliatory hostile working environment created by PMT President Alfred Iversen.

    f. Patricia Lebens resigned from employment at PMT on November 12, 2010.

23. The unlawful employment practices complained of in Paragraph 22 resulted in Lebens's constructive discharge from PMT.

24. The unlawful employment practices complained of in Paragraph 22 were intentional.

25. The unlawful employment practices complained of in Paragraph 22 were done with malice or reckless indifference to the federally protected rights of Lebens to be free of employment discrimination on the basis of her opposition to unlawful employment practices and participation in protected activity.

## RETALIATION

26. On or about September 4, 2012, PMT President Alfred Iversen learned that the EEOC determined that reasonable cause existed to believe that PMT violated Title VII and the ADEA.

27. Upon receiving notice of the EEOC's determination, PMT President Alfred Iversen learned for the first time that former PMT Human Resources Manager Patricia Lebens provided information to the EEOC that lead to the EEOC's investigation of and subsequent determinations against PMT.

28. Since at least September 2012, PMT has engaged in unlawful retaliation, in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3. These unlawful practices include but are not limited to the following:

　　a. Upon receiving notice that Patricia Lebens was the EEOC's source, PMT President Alfred Iversen determined to "go after" Patricia Lebens in retaliation for her participation in EEOC proceedings and for her opposition to PMT's discriminatory hiring practices.

　　b. PMT President Alfred Iversen and other PMT personnel directed PMT Human Resources Manager Luke Wetterlin to contact the Carver County Sheriff's Office and accuse Patricia Lebens of failing to pay her contribution to PMT's employee health insurance benefit during her employment, and to request that criminal theft charges be filed against her.

　　c. Prior to ordering Wetterlin to contact law enforcement, PMT President Alfred Iversen, other PMT personnel and Wetterlin knew allegations that Patricia Lebens failed to pay her employee contribution to PMT's employee health insurance benefit were and are false.

d. On October 5, 2012, Wetterlin reported the false theft allegations against Patricia Lebens to the Carver County Sheriff's Office, accusing Lebens of stealing $1,864.89.

e. The Carver County Sheriff's Office investigated PMT's allegations against Lebens as a felony.

f. On November 1, 2012, Patricia Lebens was contacted by a deputy with the Carver County Sheriff's Office who notified her that PMT Corporation was accusing her of felony theft. The deputy accused her of stealing from PMT "because she hated Al." The deputy gave Lebens twenty-four hours to provide documentation rebutting the allegations or he would proceed with criminal charges.

g. As a direct result of these criminal allegations, Lebens was embarrassed, humiliated, frightened and feared for the safety of herself and her son. Lebens fear was based on her experience working for PMT President Alfred Iversen, whom she knew to be quick to anger, exhibit erratic and threatening behavior, and to carry a gun. For his protection, Lebens sent her son away from home to stay with relatives for a time.

h. On November 2, 2012, Lebens provided the Carver County Sheriff's Office with documents reflecting that Lebens had paid her employee contributions to PMT's employee health insurance benefits, that this information existed in PMT's records since December 2010, and that in fact, PMT Corporation still owed Lebens approximately $100.00 in unpaid vacation time.

    i. On November 2, 2012, a deputy from the Carver County Sheriff's Office contacted PMT Human Resources Manager Luke Wetterlin and advised Wetterlin that his criminal complaint had been investigated and the deputy "found it to be unfounded."  The case was closed.

    j. PMT's filing of false criminal charges against Lebens would dissuade a reasonable worker from opposing unlawful employment practices, making or supporting a charge of discrimination, or otherwise participating in protected activity.

  29. The unlawful employment practices complained of in Paragraph 28 were intentional.

  30. The unlawful employment practices complained of in Paragraph 28 were done with malice or reckless indifference to the federally protected rights of Lebens to be free of employment discrimination on the basis of her opposition to unlawful employment practices and participation in protected activity.

## FAILURE TO MAKE AND PRESERVE RECORDS

  31. Since at least January 1, 2007, PMT has failed to make and preserve employment records relevant to the determination of whether unlawful employment practices have been or are being committed, in violation of Section 709(c) of Title VII, 42 U.S.C. § 2000e-8(c).

  32. Since at least January 1, 2007, PMT has failed to maintain employment records necessary to the EEOC's administration of the ADEA, in violation of Section 7(a) of the ADEA, 29 U.S.C. § 626(a).

33. Records which PMT unlawfully failed to retain include, but are not limited to, failing to keep applications and/or resumes for employment for one year, as required by 29 C.F.R. § 1602.14.

## **PRAYER FOR RELIEF**

WHEREFORE, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining PMT Corporation and its officers, successors and assigns, and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of sex and/or age, and from retaliating against individuals for opposition to such practices and/or participation in protected activity under Title VII.

B. Order PMT Corporation to institute and carry out policies, practices, and programs which provide equal employment opportunities for women, individuals over the age of 40, and protect from retaliation employees who make complaints of discrimination or unlawful employment practices, and which eradicate the effects of its past and present unlawful employment practices.

C. Order PMT Corporation to make whole a class of female applicants by providing appropriate back pay and benefits, with pre-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices alleged in Paragraph 13 above, including (but not limited to) rightful place hiring and/or front pay in lieu thereof.

D. Order PMT Corporation to make whole a class of female applicants by providing compensation for past and future pecuniary losses resulting from the unlawful

employment practices alleged in Paragraph 13 above, in amounts to be determined at trial.

E. Order PMT Corporation to make whole a class of female applicants by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices alleged in Paragraph 13 above, including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation amounts to be determined at trial.

F. Order PMT Corporation to pay a class of female applicants punitive damages for their malicious and reckless conduct in Paragraph 13 alleged above, in amounts to be determined at trial.

G. Grant a judgment requiring PMT Corporation to pay appropriate back wages in an amount to be determined at trial, an equal sum in liquidated damages, and prejudgment interest to individuals whose wages are being unlawfully withheld, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices alleged in Paragraph 17 above, including (but not limited to) rightful place hiring and/or front pay in lieu thereof.

H. Order PMT Corporation to make Patricia Lebens whole by providing appropriate back pay and benefits, with pre-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices in Paragraphs 20-30 above, including, but not limited to, rightful place reinstatement and/or front pay in lieu thereof.

I.     Order PMT Corporation to make Patricia Lebens whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described in Paragraphs 20-30 above, including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation in amounts to be determined at trial.

J.     Order PMT Corporation to make Patricia Lebens whole by paying punitive damages for its malicious and reckless conduct described in Paragraphs 20-30 above, in amounts to be determined at trial.

K.     Order PMT Corporation to make and preserve records required by the Commission, in accordance with Section 7(a) of the ADEA, 29 U.S.C. § 626(a).

L.     Order PMT Corporation to make and preserve all records relevant to the determination of whether unlawful employment practices have been or are being committed, in accordance with Section 709(c) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-8(c).

M.     Grant such further relief as the Court deems necessary and proper in the public interest.

N.     Award the EEOC its costs of this action.

## JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

P. David Lopez
General Counsel

        James L. Lee
        Deputy General Counsel

        Gwendolyn Young Reams
        Associate General Counsel

        Equal Employment Opportunity Commission
        131 M Street, NE
        5th Floor
        Washington, D.C. 20507
        (202) 663-4702

Dated:  March 5, 2014        s/John C. Hendrickson
        John C. Hendrickson
        Regional Attorney

Dated:  March 5, 2014        s/Jean P. Kamp
        Jean P. Kamp
        Associate Regional Attorney

        Equal Employment Opportunity Commission
        Chicago District Office
        500 West Madison Street, Suite 2000
        Chicago, IL 60661
        (312) 353-7716

Dated:  March 5, 2014        s/Nicholas J. Pladson
        Nicholas J. Pladson (#0388148)
        Senior Trial Attorney

        Equal Employment Opportunity Commission
        Minneapolis Area Office
        330 Second Avenue South, Suite 720
        Minneapolis, MN 55401
        Telephone:  (612) 335-4047
        nicholas.pladson@eeoc.gov